UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 2:21-CR-109 |
| | ) |
| TONYA RAE SAINE | ) |

MEMORANDUM OPINON AND ORDER

This matter is before the Court on Defendant's Motion for New Trial. [Doc. 147]. The Government has responded in opposition. [Doc. 150]. The matter is now ripe for review. For the reasons that follow, Defendant's Motion is **DENIED**.

I.  BACKGROUND

Defendant proceeded to trial on one count of making a false and fictitious statement in connection with the acquisition of a firearm, in violation of Title 18, United States Code, Section 922(a)(6), and one count of knowingly disposing of a firearm to a felon, in violation of Title 18 United States Code, Section 922(d)(1). On December 14, 2022, at the close of the Government's case-in-chief, Defendant made an oral motion for a judgment of acquittal which the Court denied. [Doc. 138]. The next day, the jury convicted Defendant of both counts. [Docs. 139, 143]. Defendant subsequently filed this Motion.

II.  LEGAL STANDARD

Federal Rule of Criminal Procedure 33(a) states that a district judge may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). When faced with a Rule 33 motion, the district court may weigh the evidence and assess the credibility of the witnesses. *United States*

*v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998) (stating that the district judge can act in the role of a "thirteenth juror" when considering a Rule 33 motion). A defendant may argue that a new trial is warranted if the jury's verdict "was against the manifest weight of the evidence," but a new trial on this basis is generally only granted "in the extraordinary circumstance where the evidence preponderates heavily against the verdict." *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007) (citations omitted).

Courts have interpreted Rule 33's broad "interest of justice" language to warrant new trials in a host of other circumstances as well. *See United States v. Griffin*, No. 15-CR-1-ART, 2015 U.S. Dist. LEXIS 192647, at *2 (E.D. Ky. Apr. 29, 2015) (collecting cases). Ultimately, however, a new trial is a disfavored remedy to be granted "with great caution." *United States v. Fritts*, 557 Fed. App'x 476, 479 (6th Cir. 2014) (citation omitted). "The defendant bears the burden of proving that a new trial should be granted." *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994) (citation omitted).

**III. ANALYSIS**

Defendant requests a new trial on three grounds, namely that the Court erred in admitting a text message between Defendant and her husband into evidence, and that the Government's disclosure of a recorded interview during trial and failure to call a specific witness both warrant a new trial. The Court, for the following reasons, rejects all three of Defendant's arguments.

**1. The Court Did Not Err in Admitting a Text Between Defendant and Her Husband/Co-Defendant Because the Text Fell into an Exception for Privileged Marital Communications**

Defendant argues that the Court erred in allowing a text message between Defendant and her co-defendant husband, Ricco Saine, into evidence. This text message was the subject of a

motion *in limine* which the Court resolved pre-trial. [Doc. 145]. The Court found that the text message fell within the "joint participant" exception to the marital communications privilege.

The Court declines to change its ruling on the motion *in limine*. The marital communications privilege exists "to protect information privately disclosed between husband and wife in the confidence of the marital relationship." *United States v. Jackson*, 768 F. App'x 400, 407 (6th Cir. 2019) (quoting *Trammel v. United States*, 445 U.S. 40, 51 (1980)); *see also United States v. Porter*, 986 F.2d 1014, 1018 (6th Cir. 1993) (stating that marital communications privilege "exists to insure that spouses generally, prior to any involvement in criminal activity or a trial, feel free to communicate their deepest feelings to each other without fear of eventual exposure in a court of law" (quoting *United States v. Byrd*, 750 F.2d 585, 590 (7th Cir. 1984))).

Either spouse may assert this privilege upon meeting three prerequisites: (1) at the time of the communication, the spouses must have been married under state law; (2) the communication must have been "utterances or expressions intended by one spouse to convey a message to the other;" and (3) the communication must have been made in confidence. *Jackson*, 768 F. App'x at 407 (citations omitted). Regardless of whether the prerequisites have been met, "[c]ommunications 'regarding joint ongoing or future patently illegal activity'" are not protected. *Id.* (quoting *United States v. Sims*, 755 F.2d 1239, 1243 (6th Cir. 1985). "[T]he public's interest in discovering the truth about criminal activity outweighs the interest in protecting marriage when 'spouses engage in conversations regarding joint ongoing or future patently illegal activity.'" *United States v. Gray*, 71 Fed. App'x 485, 489 (6th Cir. 2003) (citation omitted).

The text message between Defendant and her husband, Ricco Saine, stated, "I've got your gun and stuff in the house." [Doc. 129, at 3]. This message is clearly in regards to ongoing patently illegal activity, as Defendant's husband, a convicted felon, cannot possess a firearm. The concern,

then, is whether the text message shows *joint* illegal activity. The Court finds now, as it did prior to trial, that the text shows joint illegal activity. The plain text of the message tends to show that at the time the message was sent, Defendant was in actual possession of a firearm but intended to dispose of that firearm to her husband in the future, since she refers to the gun as "your[s]." This evidence is undoubtedly relevant under Rule 403, and it is not unduly prejudicial. For these reasons, the Court finds that this text message is not protected by the marital communications privilege because it falls within the joint participant exception. The text message was properly admitted as evidence.

Defendant's remaining arguments regarding the sufficiency of the evidence presented at trial spool out from the assumption that the text message was improperly admitted. For example, Defendant asserts that:

> *[B]ut for* the text message, the Government was left in count 2 with proof presented through the surveillance video from the store, as well as the testimony from ATF Agents (x 3) concerning the nature of straw purchases, and the testimony by Kaylea Campbell that she witnessed Ricco Saine with a handgun on one or more occasions. Considering each item of evidence separately, the surveillance video would <u>not</u> amount to proof beyond a reasonable doubt, as there is insufficient proof that Ms. Saine purchased the firearms for Ricco Saine, *but for* Kaylea Campbell's testimony. However, her testimony was likely to be deemed *incredible*, since she had motive to lie, opportunity to change her statement, and was testifying to avoid prosecution in federal court, and lenience in state court on companion charges with Ricco Saine. In other words, the text message itself, puts the evidence over the 50/50 probability, and likely impacted the jury verdict as a direct result. There is no proof to corroborate . . . that this was a 'straw purchase' without the text message and Kaylea Campbell.

[Doc. 147, at 5–6 (emphasis in original)].

The Court has determined that the text message was properly admitted, so there is no need to reach Defendant's slippery slope arguments related to the sufficiency of the evidence. "The verdict should not be considered unreasonable simply because different inferences could have been drawn or because other results are more reasonable." *United States v. Lymio*, 574 Fed. App'x 667,

4

672 (6th Cir. 2014) (citing *Porter v. Lima Mem. Hosp.*, 995 F.2d 629, 635 (6th Cir. 1993)). "The jury had all of the information concerning the witnesses' credibility. They were 'free to draw inferences, assess witnesses' credibility, and interpret evidence for or against'" Defendant. *Id.* (citing *United States v. Harris*, 200 F. App'x 472, 503 (6th Cir. 2006)). The Court acknowledges Ms. Campbell's possible reasons to provide less than credible testimony, but Defendant was allowed to cross-examine Ms. Campbell regarding her potential bias and her truthfulness, and the Court did not find her to be wholly incredible as Defendant claims. In light of the foregoing, the Court does not find that "the evidence preponderates heavily against the verdict" in order to warrant a new trial. *Hughes*, 505 F.3d at 593.

Further, to the extent that Defendant claims that the admitted text message was taken "out of context" as a basis for a new trial, the Court has no grounds to make such a determination. At no point did either party attempt to introduce any additional text messages in order to give context to the message introduced by the Government. The Court cannot possibly determine whether the text was taken out of context when it has no evidence from trial upon which to base that determination. For all these reasons, Defendant's Motion for New Trial with respect to the text message admitted and the sufficiency of the evidence is **DENIED**.

### 2. Timing of Disclosure of Task Force Officer Slater's Interview with Kaylea Campbell Is Not Basis for New Trial

On the second day of trial, prior to the beginning of proceedings, the Government informed Defendant of a video-recorded interview with witness Kaylea Campbell. The recorded interview was conducted by Task Force Officer Slater, another witness in Defendant's trial. Neither witness had testified as of the time of the interview's disclosure. Counsel for Defendant reviewed approximately three-fourths of the interview over the lunch break. According to Defendant's recollection of the trial proceedings, "by the time counsel reviewed [the recording] over lunch,

5

Detective Slater's testimony was concluded, and the Government placed Kaylea Campbell on direct examination." [Doc. 147, at 7–8]. Defendant claims this late disclosure is a basis for a new trial because she was not given sufficient notice of the recorded interview, in light of *Giglio v. United States*, 405 U.S. 150 (1972) and the Jencks Act, to adequately cross-examine and/or impeach TFO Slater and Kaylea Campbell. [*Id.* at 9].

With respect to whether Defendant's constitutional rights have been violated pursuant to *Giglio* or *United States v. Brady*, 373 U.S. 83 (1963), there is no doubt that the impeachment evidence at issue was eventually disclosed. Due process requires that disclosure of impeachment evidence material to guilt or innocence be made in sufficient time to permit the defendant to make effective use of that information at trial. *See, e.g. United States v. Farley*, 2 F.3d 645, 654 (6th Cir. 1993). The question at issue here is whether as a result of the timing of the disclosure, Defendant "can establish that presentation of [her] defense was so prejudiced that [s]he was prevented from receiving h[er] constitutionally guaranteed fair trial." *Id.* at 654. However, "[i]f previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs 'unless the defendant has been prejudiced by the delay in disclosure.'" *United States v. Uwazurike*, 580 Fed. Appx. 440, 447–48 (6th Cir. 1986) (citations omitted). "[T]he 'question of whether a delay [in disclosing evidence] causes prejudice is really just a type of inquiry into materiality.' Importantly, evidence is material if it impacts a determination of defendant's guilt or innocence, not h[er] ability to prepare for trial." *Id.* at 448 (citations omitted).

During trial, Defendant used portions of the recorded interview to refresh the recollection of Kaylea Campbell with respect to whether TFO Slater offered her anything in return for her cooperation. The Court notes that at the time Defendant sought to introduce the interview, defense counsel told the Court that she had received the recording that morning prior to trial. But counsel

6

did not inform the Court that she needed additional time to review the recording, nor did counsel indicate that she had any concerns regarding her ability to fully utilize the information contained therein. Since Defendant was able to successfully use the recording to refresh the recollection of Ms. Campbell with respect to cooperation, the Court does not find that the interests of justice require a new trial, even if Defendant's preparation on this point might have been affected by the timing of the disclosure. *See Uwazurike*, 580 Fed. Appx. at 448.

Defendant further argues that she was prejudiced by mid-trial disclosure of the interview because she was unable to effectively cross-examine Ms. Campbell with respect to her methamphetamine use. To the extent that Defendant claims she was prejudiced by not having the jury instructed that Ms. Campbell was under the influence of methamphetamine, Ms. Campbell testified to the jury that she was mostly using Subutex and Suboxone during the time she shared a motel room with Ricco Saine, although she also stated she might have relapsed a couple of times with methamphetamine. Defendant did not attempt to refresh Ms. Campbell's recollection with respect to her drug use, and the Court ultimately instructed the jury that Ms. Campbell periodically used "controlled substances" during the time she testified about. Defendant has not shown that she was prejudiced by not being able to further develop testimony on Ms. Campbell's methamphetamine use, or that the Government's disclosure prevented her from eliciting such testimony on cross-examination, particularly when the Court instructed the jury that Ms. Campbell used controlled substances and when Ms. Campbell admitted on the record that she was a life-long addict.

As an additional matter, the Court notes that Defendant's counsel continued her cross-examination of TFO Slater after lunch, contrary to Defendant's assertion in her Motion that the Government immediately put Kaylea Campbell on the stand after the lunch break. During trial,

Defendant did not seek to use the recorded interview for any purpose with TFO Slater. Defendant argues that if she had been able to use the video recording properly, she could have impeached TFO Slater with "promises of leniency not to prosecute in federal court." [Doc. 147, at 10]. But in real time, TFO Slater did not testify about whether he made promises to Ms. Campbell, and Defendant made no attempt to impeach TFO Slater or refresh his recollection with the recorded interview despite having reviewed at least three quarters of it over lunch. The Court finds it difficult to conclude that Defendant was unable to effectively use the interview, and therefore prejudiced, without more substantiation as to which parts of the interview Defendant believes she could have used to impeach TFO Slater, whether Defendant was able to review those portions of the interview during the lunch hour, and why Defendant was precluded from introducing those portions during trial. Under these circumstances, the Court cannot find that Defendant was prejudiced by the timing of the Government's disclosure rather than having made a strategic decision to not use the interview during TFO Slater's testimony.[1] In light of the forgoing, Defendant has not shown that she was prejudiced under *Giglio* by the delayed disclosure of the recorded interview between TFO Slater and Kaylea Campbell.

Finally, the Sixth Circuit has explicitly held that "[t]he clear and consistent rule of this circuit is that the intent of Congress expressed in the [Jencks] Act must be adhered to and, thus, the [G]overnment may not be compelled to disclose Jencks Act material before trial." *United States*

---

[1] As an additional note, the Court instructed the jury that the Government promised Ms. Campbell that she may receive a benefit in relation to pending state drug charges in exchange for her testimony. Defendant's counsel successfully elicited testimony from Ms. Campbell related to this instruction. Defendant has not sufficiently set forth how a lack of cross-examination of TFO Slater regarding leniency related specifically to *federal* charges, in light of the Court's instruction regarding the state charges, would have affected the jury's evaluation of TFO Slater's truthfulness or the jury's determination of Defendant's guilt. The Court finds that Defendant has not carried her burden to prove a new trial is warranted on this point.

*v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988) (citing *United States v. Algie*, 677 F.2d 569 (6th Cir. 1981)). *Giglio* does not "alter the statutory mandate that any 'statement' in the [G]overnment's possession related to the subject matter of a government witness's testimony shall not 'be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.'" *Id.* (citing 18 U.S.C. § 3500(a)). Defendant acknowledges in her Motion that the Government provided her with the recording prior to TFO Slater's and Kaylea Campbell's testimony. [Doc. 147, at 7]. Accordingly, the Government has not violated the Jencks Act. Defendant's Motion for New Trial with respect to the Government's disclosure of the video recorded interview between TFO Slater and Kaylea Campbell is **DENIED**.

### 3. Government's Failure to Call Witness is Not Basis for New Trial

Defendant argues a new trial is warranted because the Government failed to call a witness named Lacy Hearst, the store clerk from Smoky Mountain Gun & Ammo who assisted Defendant with the firearms purchase at issue in this case. Defendant claims that she did not learn Ms. Hearst would not be called as a witness until the Government closed its case-in-chief.

The Court notes that Ms. Hearst was not on the witness list provided to the Clerk's Office by the Government prior to trial. In any event, the absence of Ms. Hearst from the witness list is not grounds for a new trial. "[T]he [G]overnment's decision not to call a witness known to the defense does not constitute evidence suppression." *United States v. Odum*, 878 F.3d 508, 522 (6th Cir. 2017) (citing *United States v. Vasquez*, 672 F. App'x 636, 639 (9th Cir. 2016) ("[W]hen the government opts to disclose a witness list, it is not required to call all witnesses on the list.")), (vacated on other grounds by *Frazier v. United States*, 139 S. Ct. 319, 202 L. Ed. 2d 212 (2018)). Defendant's Motion for New Trial on this ground is **DENIED**.

9

## IV.    CONCLUSION

For the reasons stated above, Defendant's Motion for New Trial [Doc. 147] is **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE
